UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

HENRI PLOVIE,

        Plaintiff,

v.                                    Case No. 2:05-cv-128
                                    HON. RICHARD ALAN ENSLEN

VICTORIA JACKSON, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

        Plaintiff Henri Plovie is a prisoner confined at the Straits Correctional Facility (HTF) in Kincheloe, Michigan. Plaintiff filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against several employees of the Michigan Department of Corrections. The only remaining claim is for retaliation against defendant RUM Mike Newton, who is employed at the Ojibway Correctional Facility.

        On September 29, 2003, Plaintiff was subjected to a routine shakedown and his belt, footlocker, television, radio, tape player and some clothing were confiscated. On September 30, 2003, Defendant Newton ordered Plaintiff to move from bunk A-1-6 to A-1-34. The following day, Defendant Newton issued Plaintiff a minor misconduct for having his shirt untucked in the unit. On October 7, 2003, Assistant Resident Unit Supervisor Wolski held a hearing on the confiscated property and ordered a return of the television, footlocker, tape player, radio and belt. The other items were destroyed. Wolski also ordered Plaintiff to perform 10 hours of extra duty for having his shirt untucked in the unit. On December 1, 2003, Defendant Newton came up behind Plaintiff and asked him how much he got paid to type a grievance. Defendant Newton then placed a hand on

Plaintiff's shoulder and told Plaintiff that he was moving to A-1-36.  Later that day, Defendant Newton returned to Plaintiff's cubicle and ordered him to do a "mock pack up."  Defendant Newton again confiscated Plaintiff's television, radio, tape player, and lamp, and issued Plaintiff a minor misconduct for contraband.  Plaintiff filed a grievance on Defendant Newton for inappropriate physical contact, which was denied because Defendant Newton denied the allegations.  Plaintiff filed a grievance on Defendant Newton for insubordination after Sergeant Horton called the unit and ordered the return of Plaintiff's property because he had already had a hearing on it.  This grievance was also denied.  Finally, Plaintiff filed a grievance on Defendant Newton, Assistant Resident Unit Supervisor Wolski and Sergeant Horton for holding two hearings on the same property in violation of prison rules.  This grievance was denied.  Plaintiff was again ordered to move to a new bunk on December 3, 2003, by Defendant Newton.

Plaintiff alleges that during the months of October, November, and December, Plaintiff attended the law library to work on his civil action and used the card room for typing. Defendant Newton became aware of Plaintiff's legal activities and would occasionally walk the hallway, loudly stating that anyone who filed a grievance would have ten tickets coming.  Defendant Newton took a leave of absence from January 2004, until the first week of March 2004.  During this time, Plaintiff did not receive any tickets or other disciplinary actions.

On February 2, 2004, Plaintiff had a parole interview, after which he received a deferral.  The notice of deferral stated that Plaintiff was to have a psych evaluation, which could delay a decision for up to three months.  Plaintiff ultimately received a 12-month continuance.  On March 19, 2004, another inmate told Plaintiff that he had overheard Defendant Newton state that if Plaintiff received parole, he was going to "snatch it."  On March 21, 2004, Defendant Newton issued

a summary to Plaintiff for leaving out personal property. When Plaintiff refused to sign the summary, he was given a minor misconduct ticket and was ordered to perform a mock pack-up.

Plaintiff filed a grievance on Defendant Newton, alleging retaliation, which was denied. Defendant Newton also issued Plaintiff a major misconduct ticket for disobeying a direct order when Plaintiff attempted to return some food items to his cubicle before performing the mock pack-up. Plaintiff subsequently requested a rehearing and filed a petition for judicial review on this misconduct. Plaintiff claims that the petition for judicial review is pending in the Ingham County Circuit Court. On May 3, 2004, Plaintiff received a time review from Warden Metrish, indicating a forfeiture of 30 days of good time. On September 1, 2004, Defendant Newton posted a handwritten warning on the unit bulletin board, indicating that any prisoner caught with his pants hanging low would receive a major sexual misconduct and stating, "Good Luck at the Parole Board, C/O Newton." On November 1, 2004, Plaintiff had his second parole board interview, and received a 12-month continuance, in part, because of his recent misconduct tickets.

On December 16, 2004, Defendant Newton sent Plaintiff to a section of the prison where he did not lock in order to look at a "going away present" for another inmate, who was being discharged. When Plaintiff arrived at the area, there was a drawing of a man standing at the foot of a bunk with his penis in his hand, masturbating, with a man lying on his stomach on the bed in front of him. Plaintiff immediately left the area. Later that evening, the prisoner who was being discharged gave the drawing to Plaintiff, who sent it home along with statements from other prisoners describing the misconduct of Defendant Newton. Plaintiff filed a grievance on Defendant Newton for sending him to look at the drawing. On December 30, 2004, Defendant Newton ordered Plaintiff to submit to a shakedown. Plaintiff complied and, during the shakedown, Defendant Newton struck him in the testicles with such force that Plaintiff required medical treatment.

- 3 -

Defendant Newton told Plaintiff that the assault was in retaliation for filing grievances and that he was going to write Plaintiff a major misconduct for insolence.  Defendant Newton issued Plaintiff a major and a minor misconduct ticket.  Plaintiff wrote a grievance on Defendant Newton for this incident, but the grievance was denied by Warden Metrish.  On January 19, 2005, after Plaintiff was transferred to the Straits Correctional Facility, he was found guilty of the major misconduct for insolence.  Plaintiff filed a request for rehearing which was pending at the time he filed his complaint.  Plaintiff contends that Defendant Newton retaliated against Plaintiff for filing grievances and court actions by filing false disciplinary charges on Plaintiff, subjecting him to frequent bunk moves and mock pack-ups.

Defendant Newton has filed a motion for summary judgment.  Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial.  *Id.* at 324-25.  The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true.  *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)).  However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient.  *Anderson*, 477 U.S. at 251-52.  Ultimately, the court must determine whether

- 4 -

there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendant alleges that Plaintiff's retaliation claims arising out of major misconducts are not cognizable in this proceeding, because Plaintiff was found guilty and lost good time credits as a result of the misconduct. The Supreme Court has held that a claim for declaratory and injunctive relief, as well as for monetary damages, based upon allegations of deceit and bias on the part of the decision maker that necessarily implies the invalidity of the punishment imposed, is not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original).

The Supreme Court recently revisited this issue in *Wilkinson v. Dotson*, 544 U.S. 74 (2005), a case in which the plaintiffs claimed that the retroactive application of parole guidelines violated the Constitution's *Ex Post Facto* and Due Process Clauses. The plaintiffs sought a new parole eligibility review and a new parole hearing in accordance with the correct guidelines. 2005 WL 516415 at *2. In *Wilkinson*, the Court discussed the effect of its decisions in *Heck* and *Edwards*, as well as *Preiser v. Rodriguez*, 411 U.S. 475 (1973) and *Wolff v. McDonnell*, 418 U.S. 539 (1974) on the issue:

- 5 -

Throughout the legal journey from *Preiser* to *Balisok*, the Court has focused on the need to ensure that state prisoners use only habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody.  Thus, *Preiser* found an implied exception to § 1983's coverage where the claim seeks--not where it simply "relates to"-- "core" habeas corpus relief, *i.e.,* where a state prisoner requests present or future release. Cf. *post,* at ----5 (KENNEDY, J., dissenting) (arguing that *Preiser* covers challenges that "relate ... to" the duration of confinement).  *Wolff* makes clear that § 1983 remains available for procedural challenges where success in the action *would not necessarily* spell immediate or speedier release for the prisoner.  *Heck* specifies that a prisoner cannot use § 1983 to obtain damages where success *would necessarily* imply the unlawfulness of a (not previously invalidated) conviction or sentence.  And *Balisok*, like *Wolff*, demonstrates that habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of not previously invalidated) state confinement. These cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson*, at 81.  The Court then concluded that because the plaintiffs' claims did not necessarily imply the invalidity of their convictions or sentences, they could present these claims in the context of a § 1983 action.  *Id.*  Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *Edwards*, 520 U.S. at 646.

In *Muhammad v. Close*, 540 U.S. 749 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected.  *See Johnson v. Coolman*, No. 03-1909, 2004 WL 1367271, at *1 (6th Cir. June 15, 2004).  In other words, *Edwards*

still applies where a plaintiff has lost good time as the result of the misconduct conviction.  Under
Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary
conviction.  *See* MICH. COMP. LAWS § 800.33.  Two of plaintiff's claims involve alleged retaliatory
conduct by defendant for writing major misconducts.  Plaintiff was found guilty of both misconduct
tickets and lost good time credits.  Accordingly, in the opinion of the undersigned, Plaintiff's claims
involving his major misconduct ticket convictions are noncognizable under § 1983 because a
favorable ruling on those two claims would, if established, necessarily imply the invalidity of his
disciplinary convictions.  *See Shavers v. Stapleton*, No. 03-2210, 2004 WL 1303359, at *1 (6th Cir.
June 9, 2004).

Plaintiff alleges that Defendant Newton retaliated against him by issuing four minor
misconduct tickets between December 2003 and December 2004.  Those tickets included not having
a shirt tucked in, possession of contraband, having personal property out of Plaintiff's cell, and
another ticket for possession of contraband.  Plaintiff was found guilty of each of these minor
misconducts.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates
the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc).  In order
to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged
in protected conduct; (2) an adverse action was taken against him that would deter a person of
ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least
in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, Plaintiff must be able
to prove that the exercise of the protected right was a substantial or motivating factor in the
defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001)
(citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Defendant argues that Plaintiff was not engaged in protected conduct until two months after the first two minor misconduct tickets were issued.  In the opinion of the undersigned, Plaintiff's claim that the first two minor misconduct tickets were retaliatory must fail, because Plaintiff was not engaged in protected conduct at the time the first two minor misconduct tickets were issued.  In the opinion of the undersigned, the four minor misconduct tickets could not possibly deter a person from ordinary firmness from engaging in protected conduct such as filing grievances or lawsuits.  The misconduct tickets issued were minor misconduct tickets for rule violations. Plaintiff has not shown that he did not violate the rules, but merely asserts that it was unfair that the rules were forced against him.  Plaintiff similarly cannot show that the minor misconduct tickets were motivated by a desire to retaliate.  Plaintiff has attached affidavits from at least one other prisoner who claims that he received an inappropriate  misconduct ticket written by Defendant.  At most, plaintiff has shown that Defendant enforces the prison rules by writing misconduct tickets. Plaintiff may not like receiving the misconduct tickets, but that is not a basis for showing that he was retaliated against.  Similarly, Plaintiff's claims that he was threatened, ordered to engage in "mock up pack ups," told to look at another prisoner's drawing depicting homosexuality, and transferred to different cells within the prison fail to establish retaliatory conduct.  Plaintiff has not shown that this conduct could possibly deter an ordinary person from engaging in protected conduct, or that this conduct is adverse and motivated by the desire to retaliate.  Defendant is responsible for requiring prisoners to engage in mock pack-ups and Plaintiff has failed to show that his transfer to different cells within the prison was other than routine.

Moreover, in the opinion of the undersigned, because Plaintiff has not shown that Defendant violated any clearly established rights, Defendant is entitled to qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable
> official would understand that what he is doing violates that right.
> This is not to say that an official action is protected by qualified
> immunity unless the very action in question has previously been held
> unlawful, but it is to say that in the light of the pre-existing law the
> unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert.*

*denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been
> authoritatively decided by the United States Supreme Court, the Court
> of Appeals, or the highest court of the state in which the alleged
> constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was

previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours

of the right were sufficiently clear that a reasonable official would understand that what he is doing

violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order

to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect

a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and

a security guard at a state hospital may be liable under Section 1983 where they do not take action

to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir.

1990) (a correctional officer who observes an unlawful beating may be liable under Section 1983

even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422

(6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who

stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d 425.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).

Plaintiff filed a motion for leave to amend his complaint to correct alleged deficiencies in the complaint.  Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality."  *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995).  The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).  It appears that Plaintiff is attempting to assert new claims that should have been filed in the original complaint or is attempting to reassert claims that were previously dismissed by the court.  In the opinion of the undersigned, Plaintiff's motion for leave to amend complaint should be denied.

In summary, in the opinion of the undersigned, Plaintiff has failed to sustain his burden of proof in response to Defendant's motion for summary judgment.  Accordingly, it is recommended that Defendant's motion for summary judgment (Docket #27) be granted and this case

- 11 -

be dismissed in its entirety.  It is further recommended that the court deny Plaintiff's motion for leave to amend complaint (Docket #37).

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


 /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE


Dated:  August 31, 2006